**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Tatiana G. Avakian, Esq. (SBN 298970)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone:      (818) 991-8080
Facsimile:      (818) 991-8081
ssaltzman@marlinsaltzman.com
tavakian@marlinsaltzman.com

*Attorneys for Plaintiff and the putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| **JUSTIN OCAMPO**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**APPLE INC.**, a California corporation, and **DOES 1-10**, inclusive,<br><br>Defendants. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violation of the California Consumer Legal Remedies Act**<br>2. **Violation of the California False Advertising Law**<br>3. **Violation of the Song-Berverly Consumer Warranty Act**<br>4. **Violation of the California Unfair Competition Law**<br>5. **Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301,** *et seq.*<br>6. **Breach of Express Warranty**<br>7. **Breach of Implied Warranty of Merchantability**<br>8. **Violation of the Consumer Fraud Statutes of All 50 States and the District of Columbia; and**<br>9. **Fraudulent Concealment**<br>10. **Unjust Enrichment**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Justin Ocampo ("Plaintiff"), by and through his undersigned counsel, brings this action, on behalf of himself in his individual capacity, a Nationwide Class of all other similarly situated consumers, and a California Subclass of all other similarly situated consumers, against Defendants APPLE INC. ("Defendant"), who engages in retail sales via internet, telephone, and retail stores throughout all fifty United States and the District of Columbia, and DOES 1-10, inclusive, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this Class Action on behalf of himself and all similarly situated consumers nationwide ("Nationwide Class") and in California ("California subclass") (collectively referred to as "Class or "Classes"), as more fully defined below, seeking to redress the pervasive pattern of deceptive, false, misleading, and otherwise improper advertising, sales, and marketing practices that Defendant has engaged in with regard to their model year October 2016 and later Apple MacBook Pro laptops ("MacBook Pro" or "MacBook Pro laptops").

2.      In October 2016, Apple released a new MacBook Pro model that included a Touch Bar, a small strip at the top of the screen that features a light-up touch-based panel that replaces certain function keys on the keyboard. Apple advertised the MacBook Pro as the thinnest and lightest MacBook Pro model ever, weighing 3 pounds and measuring in at 14.9 mm of thickness, down from 18 mm.[1] Apple also announced that the new display of the MacBook Pro is 67 percent brighter, has a 67 percent better contrast ratio, and displays 25 percent more colors compared to the previous model.[2] One of the selling points of the new MacBook Pro laptops that Apple highlighted was "[t]he new display in the MacBook Pro is the best ever in a Mac notebook," and that it "ensures truer-to-life pictures with realistically vivid details..."[3]

---

[1] http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed 8/18/20)

[2] https://www.youtube.com/watch?v=19J1oK1981k (last accessed 8/18/20)

[3] http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed 8/18/20)

3.      Apple's representations of its display screen are false. In order to support a compact design, the new MacBook Pro uses thin, flexible ribbon cables ("flex cables") to connect the display to a display controller board beneath the Touch Bar. These flex cables, which wrap over the controller board, are defective. By opening and closing the laptop screen, the flex cables wear out over time. Consequentially, the laptop's display backlight[4] shows dark spots across the screen and/or stops working altogether.

4.      When the display backlight issues surface in the MacBook Pro, the laptop essentially becomes nonfunctional. Consumers are either unable to use the laptop when the laptop screen is open beyond certain degrees, or they are unable to use the laptop at all because the display screen is inoperable. Accordingly, the problems with the MacBook Pro are material and compromise the laptops' core functionality.

5.      Further, repairing the display backlight issue is not a simple fix. Because the flex cables are part of the display, the cables cannot simply be replaced. Instead, the entire display unit needs to be replaced, therefore substantially increasing the repair cost.

6.      Defendant has publicly acknowledged that the 13-inch MacBook Pro year 2016 model is prone to issues regarding the display backlight either showing vertical bright areas along the bottom of the screen, or not working at all. On May 21, 2019, Defendant issued a notice on its website, announcing the "13-inch MacBook Pro Display Backlight Service Program," ("Backlight Service Program") and acknowledging the display backlight issues.[5] The Backlight Service Program does not apply to 15-inch MacBook Pros or MacBook Pro models after 2016.

7.      In addition, even prior to announcing the Backlight Service Program, Defendant was aware of the defective nature of the flex cable design because consumers posted complaints on Defendant's website and/or submitted repair tickets to Defendant's Genius Bar. As to the former, Plaintiff is informed and believes that Defendant often removed consumer threads posted

---

[4] Backlight is a form of illumination used to illuminate a display screen.

[5] https://www.apple.com/support/13-inch-macbook-pro-display-backlight-service/ (last accessed 8/18/20)

on its website that discussed the defective flex cable design and display backlight issues. As to the repair tickets, because these defects typically manifested after Apple's one-year written warranty, in order to repair the defects, Apple quoted consumers hundreds of dollars to replace the entire display screen. Thus, after the warranty period expires, consumers are left with a defective laptop, and forced to pay for the expensive costs of repairing the entire display screen in order to have a functioning laptop.

8. Despite having knowledge of the defective flex cable design, at no time while Defendant advertised and sold the MacBook Pros did Defendant disclose to Plaintiff and other consumers that the flex cables were defective, or that the laptop was prone to display backlight issues. Had Defendant notified its consumers of these defects, and had its consumers known of Defendant's false and misleading advertising, its consumers would not otherwise purchased a purportedly high-end laptop costing approximately $1,499.00 to $2,399.00.[6]

9. Numerous consumers, including Plaintiff, have reported display backlight issues when opening and closing their MacBook Pro laptops, and have posted comments on various online forums, blogs, and Apple's website. Further, a consumer started a petition on Change.org – which includes close to 28,000 signatures – requesting that Defendant launch an extended warranty program to address the display backlight issues.[7]

10. Not only has Defendant sold the defective MacBook Pro, Defendant unreasonably delayed issuing a repair program despite the fact that it both knew and should have known that the flex cables resulted in backlight display screens that rendered the laptops inoperable before it issued a notice regarding the Backlight Service Program.

11. In addition, another Change.org petition was started addressing Apple's inadequate Backlight Service Program, citing complaints that Apple refused to provide free display repair or repair refunds under the program to certain customers because "the serial number

---

[6] The price of the MacBook Pro varies, depending on storage size.

[7] https://www.change.org/p/apple-fix-all-macbook-pro-2016-and-later-with-stage-light-effect-or-backlight-shutdown-flexgate (last accessed 8/18/20)

1    does not qualify," or "the system does not process," or not providing a reason at all.[8] The

2    Backlight Service Program is inadequate also in that it does not provide repair services to the 15-

3    inch MacBook Pros or for MacBook Pros after the year 2016.

4         12.    Accordingly, Plaintiff brings this class action on behalf of himself and all other

5    similarly situated consumers seeking monetary relief and an order forcing Defendant to provide

6    appropriate injunctive relief by no longer defrauding the public and its consumers by advertising

7    and selling the MacBook Pro models with the defective flex cables, and by ensuring that it

8    provides an adequate, comprehensive program for repairing all MacBook Pro models that

9    experience backlight display issues and/or will manifest backlight display issues in the future.

10                                    **PARTIES**

11        13.    Plaintiff is and at all material times was a citizen and resident of San Joaquin

12   County, California. Plaintiff purchased the MacBook Pro at issue at Best Buy in San Jose,

13   California.

14        14.    Defendant is a California corporation with its principal place of business at One

15   Apple Park Way, Cupertino, California 95014. Defendant is a multinational company that designs,

16   develops, and sells consumer electronics, computer software, and online services.

17        15.    DOES 1 through 10 inclusive are now and/or at all times mentioned in this

18   Complaint were licensed to do business and/or actually doing business in the State of California.

19   Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of

20   DOES 1 through 10, inclusive and for that reason, DOES 1 through 10 are sued under such

21   fictitious names. Plaintiff will seek leave of court to amend this Complaint to allege such names

22   and capacities as soon as they are ascertained.

23                         **JURISDICTION AND VENUE**

24        16.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because at least

25   one member of the putative Class is a citizen of a State other than that of the Defendant, there are

26   _____

27   [8] https://www.change.org/p/apple-stop-avoiding-refunds-to-users-affected-by-macbook-pro-

28   backlight-service-program (last accessed 8/18/20)

1    more than 100 Class members, and the damages suffered and sought to be recovered herein total,

2    in the aggregate, in excess of $5,000,000, exclusive of interests and costs.

3          17.    Personal jurisdiction is proper because Defendant's principal place of business is

4    within this District and Defendant has purposefully availed itself of the privilege of conducting

5    business activities within this District.

6          18.    The Court has original jurisdiction under the Class Action Fairness Act ("CAFA")

7    and/or supplemental jurisdiction under 28 U.S.C. § 1367.

8          19.    Venue is proper under 28 U.S.C. § 1391 because Defendant, at all material times,

9    has had continuous and systematic contacts in this District by actively doing business and

10   perpetuating the deceptive business practices that are the subject of this lawsuit in this District. In

11   addition, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in

12   this District in that Plaintiff purchased his MacBook Pro in this District.

13   **CALIFORNIA CHOICE OF LAW ALLEGATIONS**

14         20.    Because this Complaint is brought in California, California's choice of law regime

15   governs the state law allegations in this Complaint. Under California's governmental

16   interest/comparative impairment choice of law rules, California law applies to the claims of all

17   Class members, regardless of their state of residence or state of purchase.

18         21.    Because Apple is headquartered, and made all decisions relevant to these claims,

19   in California, California has a substantial connection to, and materially greater interest in, the

20   rights, interests, and policies involved in this action than any other state.

21   **FACTS**

22   **Common Factual Background**

23         22.    Apple first introduced the MacBook Pro line of laptops in January 2006, marketing

24   its new line of laptops as the fastest and thinnest Mac notebook ever. In its press release for the

25

26

27

28

**Class Action Complaint**

new MacBook Pro laptop,[9] Apple describes itself as revolutionizing the world of technology, particularly regarding personal computers:

> Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Today, Apple continues to lead the industry in innovation with its award-winning desktop and notebook computers, OS X operating system, and iLife and professional applications…

23.     Over the years, Apple released updated versions of the MacBook Pro that included new features, including Retina Display, thinner and lighter models, faster processors, and redesigned keyboards, among other features.

24.     On or about October 27, 2016, Apple released a new MacBook Pro model, which it characterized as the thinnest and lightest MacBook Pro model ever, with the best ever display screen of any of the MacBook Pro models.

25.     In October 2016, Apple introduced the new MacBook Pro model during its launch event at Apple's headquarters in Cupertino, California. During the event, Apple's CEO, Tim Cook, described the new MacBook Pro as "absolutely incredible."[10]  Phil Schiller, Vice President for Worldwide Marketing, praised the MacBook Pro as "the new gold standard of notebook computers," "impressive," and "the most forward-looking, advanced MacBook line we have ever had."[11] Jonathan Ive, former Chief Design Officer for Apple, described the MacBook Pro as "an extremely purposeful and powerful creative tool," and "a milestone in the evolution of the Mac."[12]

---

[9] https://www.apple.com/newsroom/2006/01/10Apple-Introduces-MacBook-Pro/ (last accessed 8/18/20)

[10] https://www.youtube.com/watch?v=19J1oK1981k (last accessed 8/18/20)

[11] *Id.*

[12] *Id.*

26.     Further, during the launch event, Mr. Schiller highlighted several defining features of the new MacBook Pro,[13] some of which include:

- "It is simply the thinnest and lightest MacBook Pro we have ever made." The 13-inch model is 17% thinner, 23% smaller in volume, and half a pound less than the previous model. The 15-inch model is 14% thinner, 20% smaller in volume, and half a pound less than the previous model.

- "The display of the new Apple Pro is simply the best display we've ever made on a Mac." Compared to the previous 15-inch MacBook Pro model, the new model is 67% brighter, has 67% higher contrast ratio, and 25% more colors.

- The synergism between the new Touch Bar and the MacBook Pro's display screen. Consumers can utilize the Touch Bar to compose emails, edit videos and photographs, adjust the display screen brightness, among other tasks, without clicking the keyboard. The options on the Touch Bar panel on which the consumer clicks are displayed on the laptop's screen. Therefore, the functionality of the display screen is central to the utilization of the Touch Bar.

27.     Apple described the new MacBook Pro laptop as "built on groundbreaking ideas."[14] The MacBook Pro included a Touch Bar, a small strip at the top of the screen that features a light-up touch-based panel that replaces certain function keys on the keyboard. On its website, Apple flaunted this new MacBook Pro as "[a] touch of genius."[15]

---

[13] *Id.*

[14] http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed 8/18/20)

[15] *Id.*



28.     Apple advertised the MacBook Pro as the thinnest and lightest MacBook Pro model ever, up to 17% thinner than previous models, and weighing 3 pounds and measuring in at 14.9 mm of thickness, down from 18 mm, for the 13-inch model.[16] Apple boasted that the new MacBook Pro "has the brightest, most colorful Mac notebook display ever," with 67% brighter display than prior models.[17]

---

[16] *Id.*

[17] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12

**Thinnest and Lightest MacBook Pro Ever**



The lightest MacBook Pro ever also features a larger trackpad and the most responsive keyboard ever.

13    29.    Apple's website emphasized that "[t]he new display in the MacBook Pro is the
14  best ever in a Mac notebook," and that it "ensures truer-to-life pictures with realistically vivid
15  details…"[18]

16
17
18
19
20
21
22
23
24
25
26



27

28  [18] *Id.*

30.     Apple began selling the new MacBook Pro on or about October 27, 2016. Since then, Apple has released updated versions of the MacBook Pro in 2017, 2018, and 2019, which were similar to the October 2016 model.  Apple charges a premium price for its MacBook Pros, ranging from $1,499 to $2,399.

31.     Based on Apple's various representations that the MacBook Pro models since October 2016 are high-end and revolutionary laptops, consumers across the country pay a premium price for the MacBook Pro laptops, believing that they are lighter, thinner, and have a better display screen than other laptops on the market.

**The MacBook Pro Is Defective**

32.     The MacBook Pro has a defective flex cable, which connects the laptop's display screen to the base of the laptop. The flex cable is a latent, physical defect. Beginning with the new model of MacBook Pro laptops from in or around October 2016, Apple opted to use a flexible ribbon cable to connect the display screen to a display controller board in order to design the thinnest and lightest laptop. An image of the flex cable wrapped around the display controller board is shown below:[19]



---

[19] https://web.archive.org/web/20190605233112/https://ifixit.org/blog/12903/flexgate/ (last accessed 8/18/20)

33.     The flexible cables wrap over the display controller board and deteriorate over time with the ordinary use of opening and closing the laptop display screen. The deterioration of the flex cables results in the display screen exhibiting dark spots and/or in the display screen turning completely black when the laptop screen is open beyond certain angles (with some consumers complaining of experiencing issues if they opened the screen beyond a 45-degree angle). Therefore, consumers are prevented from using their laptops for their ordinary and intended purpose: to open the display screen beyond a 45-degree angle when using the laptop.

34.     Since the release of the MacBook Pro in or around October 2016, consumers have flooded forums, blogs, and Apple's website with complaints about the issues with the display screen, including that the screen shows dark spots and shuts down completely:

sofie, posted on March 19, 2019 at 5:57 am

This just happened to my macbook pro 13' as well.  First the stage light appeared and now, two weeks later I can't open it more then 45º without it's going black.  1 year warranty has just expired ):[20]

Tami, posted on March 20, 2019 at 12:21 am

Thank you for this.  I've had the exact same problem with my 2016 MBP 13" with Touch Bar.  First the stage light effect, then the blacking out if opened past 45 degrees.  Warranty expired six months ago.  I didn't expect to need Apple Care for a $3k machine, given my last MBP lasted five years and was still going strong when I passed it on to a niece.  Apple should do the decent thing.  I've been a loyal Apple user for years but this has me questioning that.[21]

Imrul Huda, posted on March 23, 2019 at 3:09 am

Hi! I am graduate student who spent 1700 dollar out of 2000 savings for MBP 2016 oct Model.  Now I am screwed.  The screen is very dark.  It first seems completely turned off.

---

[20] https://web.archive.org/web/20190605233112/https://ifixit.org/blog/12903/flexgate/ (last accessed 8/18/20)

[21] *Id.*

But after looking very carefully, You can see that it is actually on.  But definitely in a non-working condition.  What can I do?  Should I replace it?  If it replace it, do I have to do that again in 02 years?  Is there are a lawsuit or petition?  I am thinking about using it with external monitor instead of replacing display.[22]

Supun, posted on March 23, 2019 at 11:20 pm

Hi!, This happened to my MBP 2017, just one week after the warranty.  Went from dealer to dealer, tried Apple, finally paid LKR 95,000/- (USD 534) and got the whole screen replaced.  I don't know if this is a permanent solution since the new screen cable is bound to fail too, just around the year mark.  It is not how, it is when your MBP get affected, because ultimately all MBP will end up with this issue sooner or later.  So if your are thinking my MBP is still not affected, don't worry it will…This is what happen when 'Tim Apple' takes over from 'Steve Apple' and end up with 'Rotten Apples'.  Singed the petition and waiting for some good news.[23]

Ching, posted on January 26, 2019 at 7:30 am

My MacBook pro with touch bar bought in 2018, and the stage light effect appeared at the first week while watching video!  And it is still regularly appeared…after reading this blog, I just realized how serious it is and will send back asap!  Thanks.[24]

Noor Sabarullah B Sugiman, posted on January 24, 2019 at 3:48 pm

Happened to us too!! MBP retina display 2016.  At first it was a broken screen.  Spend a fortune as apple says its our fault.  After 6 months or so now we have the issue exactly explained here.  At around 50 deg.  We went to apple repair centre [sic] and the fella over there says oh it's quite common.  You are among 6-7 others who have this problem.  Now we paid kidney-worthy price and i feel we kinda get black market scam after service.[25]

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

Sergey, posted on October 22, 2019

I have the same issue with my MBP touch bar 2017. Apple denied it and suggests me to pay for the repairing. Its [*sic*] very sad. I open thread on Apple …[26]

Chuck, posted on December 5, 2019

…Our child bought a macbook pro for college. Now, barely after 2 years with this nearly $1500 machine, it too has a monitor cable issue. We made an appointment at the apple store (closest one over an hour away) and were told would be a $500 fix plus more if any additional problems were found. So we purchased a new macbook pro due to the urgency. Coincidentally the man beside us at the apple store table had the EXACT SAME MACBOOK MONITOR ISSUE with his college daughter's mabook pro. "Stage lights" a few days or weeks then no backlight at all especially if you open it more than half way. Since, I am now livid! After contacting a few 3rd party apple repair shops & searching the internet I discover this is a KNOWN ISSUE. No mention from the Apple Store employee. No accountability from apple.[27]

35.     Consumers also posted comments on Apple's website, complaining about the flex cable and black light screen issues. However, consumers complained that Apple was removing these comments:

Joe Black, posted on March 14, 2019 at 11:20 am

I have a feeling that Apple has a script that prevents you from posting anything that includes stage light, design flaw, or extended warranty.  A tl;dr [*sic*] for that idea is that my Mac (2016 touchbar model) screen just died after suffering from the stagelight issue, so I wanted to rant on Apple support.  Bad idea.  It was instantly deleted.[28]

---

[26] https://ifixit.org/blog/12903/flexgate/ (last accessed 8/18/20)

[27] *Id.*

[28] https://web.archive.org/web/20190605233112/https://ifixit.org/blog/12903/flexgate/ (last accessed 5/12/20)

akjaineusanuj, posted on January 22, 2019

…Also see https://discusionss.apple.com/thread/250...about this issue as well

In response, spearson commented on January 26 that "Looks like Apple deleted the topic on your issue just now.[29]

sishmuemaw, posted on December 25, 2018

…Apple frequently deleted that issue whenever you post on their discussion forum…[30]

36.     Apple was aware of the issues with the backlight screen and the defective flex cable, in light of the comments posted by consumers on Apple's discussion forum and that those comments were deleted after they were posted. Despite these complaints, Apple did not take steps until in or around May 2019 to correct the defective flex cable in the MacBook Pro – and solely for the 13-inch 2016 MacBook Pro model.

37.     In addition, Apple was aware of the issues with the backlight screen and the defective design because the flex cable in the 2018 MacBook Pro laptops was approximately 2 mm longer than in the 2016 or 2017 MacBook Pro models.[31] Therefore, Apple was aware that the defective thinner and shorter flex cable resulted in the backlight screen issues in the MacBook Pro and redesigned the flex cable in the newer MacBook Pro model.

38.     Although Defendant issued a notice of a service program on or about May 21, 2019, to consumers of 2016 MacBook Pros with backlight issues, the repair program is inadequate to address the complaints made by consumers. The repair program is only limited to 13-inch 2016 MacBook Pro models. Therefore, 15-inch models and models for years other than 2016 are excluded from the repair program.

---

[29]

https://web.archive.org/web/20190605233110/https://www.ifixit.com/Answers/View/486856/Screen+issues,+Back+light+dims+&+goes+out (last accessed 8/18/20)

[30] *Id*.

[31] https://ifixit.org/blog/13979/apples-2018-macbook-pros-attempt-to-solve-flexgate-without-admitting-it-exists (last accessed 8/18/20)

39.     Further, the repair program is insufficient in that it fails to provide monetary compensation to consumers who were forced to pay out-of-pocket for repairs they made to their MacBook Pros at any point prior to the repair program.

40.     In addition, the repair program fails to account for monetary compensation to consumers who are forced to part with their MacBook Pros during the period when the laptops are submitted to Apple for the service program.

41.     Many consumers have incurred substantial expenses as a result of purchasing the MacBook Pros, including the cost of the laptops, the cost to repair the laptops, and the purchase of any external equipment used as a result of the backlight issues experienced with the MacBook Pros.

**Plaintiff's Experience**

42.     On or about December 21, 2016, Plaintiff purchased a 13-inch MacBook Pro laptop from Best Buy in San Jose, California for $1,376.38.[32] Plaintiff's MacBook Pro automatically came with Defendant's one-year warranty plan.

43.     Before purchasing the MacBook Pro laptop, Plaintiff watched Apple's October 2016 launch event, which announced the new MacBook Pro model. In addition, Plaintiff reviewed Apple's website, which advertised the features of the MacBook Pro model. Plaintiff recalls Apple representing that the new MacBook Pro was the thinnest, lightest MacBook Pro ever, that it had the best display screen ever, and that it was a revolutionary design. Plaintiff relied on these representations to purchase the MacBook Pro laptop.

44.     In or around late 2018, between October and December, the backlight on Plaintiff's MacBook Pro began failing such that the display screen depicted dark spots near the bottom of the screen, which interfered with the clarity of the images displayed on the screen. The failing backlight issue occurred on a more consistent basis within 1-2 weeks after it first started. These issues were an interference with the ordinary use of Plaintiff's laptop, particularly where Plaintiff

---

[32] The regular price of Plaintiff's MacBook Pro was $1,799.99. However, Plaintiff received a discount on his purchase because the laptop had been previously opened.

used his MacBook Pro to edit photographs. The following image found online[33] is representative of the issues that Plaintiff experienced with his display screen:



45.     Shortly thereafter, in or around December 2018 or January 2019, the display screen on Plaintiff's laptop failed completely where the screen turned black despite the laptop being turned on.  The display screen turned black when the monitor was open at an angle greater than approximately 30 degrees.  Therefore, Plaintiff was unable to utilize his MacBook Pro when the monitor was open at a normal angle.

46.     In or around January 2019, Plaintiff took his MacBook Pro to the Apple Oakridge store in San Jose, California and consulted with one of the Genius Bar representatives regarding the display screen issue. Apple told Plaintiff that he would need to ship his MacBook Pro to an

---

[33] https://www.theverge.com/2019/3/5/18251264/macbook-pro-2018-flexgate-fix-display-cable-2mm-longer (last accessed 8/18/20)

**Class Action Complaint**

offsite repair center to replace the display screen. Because the MacBook Pro was no longer under Apple's one-year warranty plan, Defendant quoted Plaintiff $475.00 for the repair.

47.     Plaintiff was unable to afford the repair cost and did not submit his MacBook Pro to Apple for repair at that time.

48.     Due to the display screen issues, Plaintiff was forced to connect the MacBook Pro to an external display screen in order to use the laptop and access his files. As a result, once the display screen turned black, Plaintiff was unable to use the MacBook Pro for its intended purpose: as a portable computer. Plaintiff relied on his MacBook Pro in class, and took his laptop with him to his college classes. Between approximately February and May 2019, Plaintiff was forced to borrow his family member's laptop, which was an older, heavier, and slower laptop than the MacBook Pro.

49.     On May 22, 2019, after Plaintiff learned of Defendant's "Backlight Service Program," Plaintiff submitted his MacBook Pro to Apple for a free repair. Plaintiff received his laptop approximately 2 to 3 days later. During that time, Plaintiff was without a laptop and Defendant did not offer to provide Plaintiff a loaner laptop.

50.     Immediately prior to purchasing the MacBook Pro, Plaintiff saw and relied upon Defendant's false and misleading marketing and advertising campaign alleged herein. But for Defendant's misrepresentations that he was purchasing a MacBook Pro with a revolutionary design and the best display screen, Plaintiff would not have purchased the MacBook Pro. Plaintiff would not have purchased the MacBook Pro had he known that it had a defective flex cable and that it would manifest backlight display issues.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this lawsuit, both individually and on behalf of similarly situated purchasers of the Products, pursuant to Rule 23. Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed. The proposed Classes are defined as follows:

/ / /

/ / /

**Nationwide Class**: All individual consumers in the United States who purchased model year 2016 or later Macbook Pro laptops at any time beginning 4 years preceding the filing of this Complaint and continuing to the present.

**California Subclass**: All individual consumer residents of California who purchased model year 2016 or later MacBook Pro laptops at any time beginning 4 years preceding the filing of this Complaint and continuing to the present.

Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

52.    Plaintiff and Class members seek relief under Rule 23(a) and (b)(2). The injunctive relief is a significant reason for bringing this case and separately justifies the prosecution of this litigation. Plaintiff and Class members also seek relief under Rule 23(b)(3) and/or (c)(4).

53.    **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The total membership of the Class is unknown to Plaintiff at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the Class. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Similarly, Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

54.    **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a.    Whether the MacBook Pro laptops were defective at the time of sale;

b.    Whether the defect substantially impairs the value of the MacBook Pro laptops;

c.    Whether Defendant knew or should have known that the MacBook Pro laptops contained defective designs, flex cables and/or backlight display issues (i.e., the display screens showing vertical bright areas along the bottom of the screen and/or the display backlight not working at all), but continued to promote and sell the MacBook Pro laptops without disclosing the problems and their consequences to

consumers;

d.   Whether a reasonable consumer would consider the defect and its consequences to be material;

e.   Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the MacBook Pro;

f.   Whether Defendant wrongfully represented and continues to represent that the MacBook Pro is of superior quality;

g.   Whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

h.   Whether Defendant knowingly advertised goods with intent not to sell them as advertised;

i.   Whether Defendant's practices are likely to deceive reasonable consumers;

j.   Whether Defendant knowingly made false or misleading statements of fact concerning reasons for, existence of, or the quality of the MacBook Pro;

k.   Whether Defendant knowingly represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve;

l.   Whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, distribution, and sale of the MacBook Pro violated the laws alleged herein;

m.   Whether the backlight service program was adequate in addressing the defects of the MacBook Pro;

n.   Whether Defendant breached its express warranties;

o.   Whether Defendant breached its implied warranties;

p.   Whether Plaintiff and members of the Class have sustained monetary loss and the proper measure of that loss;

q.   Whether Plaintiff and members of the Class are entitled to injunctive and other equitable relief; and

**Class Action Complaint**

1    r.    Whether Defendant was unjustly enriched by their conduct.

2    55.    **Predominance of Common Questions:** Common questions of law and fact

3    predominate over questions that affect only individual members of the Classes. The common

4    questions of law set forth above are numerous and substantial and stem from Defendant's

5    practices applicable to each individual Class member. As such, these common questions

6    predominate over individual questions concerning each individual Class member's showing as to

7    his or her eligibility for recovery or as to the amount of his or her damages.

8    56.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the

9    Classes because, among other things, Plaintiff and all Class members were comparably injured

10   through Defendant's misconduct described above. As alleged herein, Plaintiff, like the members

11   of the Classes, purchased the MacBook Pro after exposure to the same material misrepresentations

12   and/or omissions appearing in Defendant's marketing and advertising campaign, and Plaintiff's

13   MacBook Pro manifested backlight display issues. Plaintiff is advancing the same claims and

14   legal theories on behalf of himself and all absent Class members. Further, there are no defenses

15   available to Defendant that are unique to Plaintiff.

16   57.    **Adequacy of Representation:** Plaintiff is an adequate class representative

17   because he is fully prepared to take all necessary steps to represent fairly and adequately the

18   interests of the members of the Class, and because his interests do not conflict with the interests

19   of other Class members he seeks to represent. Moreover, Plaintiff's attorneys are ready, willing

20   and able to fully and adequately represent Plaintiff and the members of the Classes. Plaintiff's

21   attorneys are experienced in complex class action litigation, and they will prosecute this action

22   vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and his

23   counsel, who are experienced class action lawyers.

24   58.    **Superiority:** The nature of this action and the format of laws available to Plaintiff

25   and members of the Classes make the class action format a particularly efficient and appropriate

26   procedure to redress the violations alleged herein. If each Class member were required to file an

27   individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would

28   be able to exploit and overwhelm the limited resources of each individual plaintiff with its vastly

1   superior financial and legal resources. Moreover, the prosecution of separate actions by the

2   individual Class members, even if possible, would create a substantial risk of inconsistent or

3   varying verdicts or adjudications with respect to the individual Class members against Defendant;

4   and which would establish potentially incompatible standards of conduct for Defendant; and/or

5   legal determinations with respect to individual Class members which would, as a practical matter,

6   be dispositive of the interest of the other Class members not parties to adjudications or which

7   would substantially impair or impede the ability of the Class members to protect their interests.

8   Further, the claims of the individual members of the Classes are not sufficiently large to warrant

9   vigorous individual prosecution considering all of the concomitant costs and expenses attending

10  thereto.

11      59.    As such, the proposed Classes defined herein are maintainable as classes under

12  Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and/or (b)(3), and (c)(4).

13                                  **<u>COUNT I</u>**
                **Violation of the California Consumers Legal Remedy Act**
14                      **[Cal. Civil Code §§ 1750, *et seq*.]**
                **(Asserted on Behalf of Plaintiff and the California Subclass)**
15

16      60.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

17  forth herein.

18      61.    Plaintiff and members of the Class have standing to pursue a cause of action for

19  violation of the Consumer Legal Remedies Act ("CLRA") because they have suffered an injury-

20  in-fact and lost money as a result of Defendant's actions as set forth herein.

21      62.    Plaintiff and the members of the Class are "consumers" as that term is defined by

22  Cal. Civil Code § 1761(d).

23      63.    The Products marketed and sold by Defendant are "Goods" as that term is defined

24  by Cal. Civil Code § 1761(a).

25      64.    Defendant is a "person" as that term is defined by Cal. Civil Code § 1761(c).

26      65.    The transactions described herein are "transactions" as that term is defined by

27  Cal. Civil Code § 1761(e).

28  / / /

66.     Defendant's policies, acts, and practices described above were intended to induce consumers to purchase the MacBook Pro laptops.

67.     Defendant made uniform material misrepresentations and omissions that the MacBook Pro laptops were of a particular standard, quality, or grand when they were of another, and advertising the MacBook Pro with the intend not to sell them as advertised.

68.     Defendant's unfair or deceptive trade practices violated Cal. Civ. Code § 1770(a), as described above, by failing to disclose the defective nature of the MacBook Pro laptops and representing the MacBook Pro laptops as high-quality with premium features that it knew, or should have known, were deceptive and likely to cause consumers to purchase the Products in reliance upon said representations.

69.     Defendant violated and continues to violate § 1770(a)(5) by negligently, recklessly, and/or intentionally representing the MacBook Pro laptops are of superior quality with the brightest, most colorful display screen ever.

70.     Defendant violated and continues to violate § 1770(a)(7), by negligently, recklessly, and/or intentionally representing  that the MacBook Pro laptops are of superior quality with the brightest, most colorful display screen ever.

71.     Defendant violated and continues to violate § 1770(a)(9) by negligently, recklessly, and/or intentionally advertising goods with intent not to sell them as advertised.

72.     Defendant violated and continues to violate § 1770(a)(16) by representing that the MacBook Pro laptops have been supplied in accordance with previous representations when they have not.

73.     Defendant had ample means and opportunities to alert Plaintiff and the Class members to the fact that the MacBook Pro is defective, contains defective flex cables, and exhibits backlight display issues. Despite its exclusive knowledge and opportunities to reveal the defective nature of the MacBook Pro, Defendant failed to disclose to Plaintiff and the Class members that the MacBook Pro is defective.

74.     Defendant's actions described above were done with conscious disregard of the rights of Plaintiff and members of the Class.

75.    Plaintiff and members of the Class have been directly and proximately damaged by Defendant's actions described herein.

76.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks injunctive relief in the form of an order enjoining the wrongful acts and practices of Defendant. Plaintiff will be irreparably harmed if such an order is not granted.

77.    Additionally, on August 19, 2020, Plaintiff mailed Defendant notice of its violations of Cal. Civil Code § 1770 in accordance with Cal. Civil Code § 1782. If Defendant fails to make the demanded corrections within thirty (30) days of receipt of Plaintiff's notice, Plaintiff will seek leave to amend the Complaint to claim damages under the CLRA.

78.    Plaintiff seeks the recovery of court costs and attorneys' fees pursuant to Cal. Civil Code § 1780(e).

**<u>COUNT II</u>**
**False and Misleading Advertising**
**[Business & Professions Code §§ 17500, *et seq.*]**
**(Asserted on Behalf of Plaintiff and the California Subclass)**

79.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

80.    California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... any statement ... which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

81.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

82.    Defendant knew or should have known that its marketing and advertising materials were false, deceptive, and misleading.

83.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class seek an order of this Court requiring Defendant to (a) identify all defective MacBook Pro laptops; (b) ensure that all defective MacBook Pro laptops are identified on its

website; and (c) ensure that all defective MacBook Pro laptops are removed from the stream of commerce.

84.     Further, Plaintiff and the members of the Class request an order awarding them restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

85.     Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay actual damages and statutory treble damages and attorneys' fees.

<u>**COUNT III**</u>
**Violation of the Song-Beverly Consumer Warranty Act**
**[Cal. Civ. Code §§ 1792, *et seq.*]**
**(Asserted on Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

86.     Plaintiff re-alleges and incorporate the foregoing paragraphs as though fully set forth herein.

87.     Plaintiff is a "buyer" within the meaning of California Civil Code § 1791(b). He purchased a MacBook Pro laptop in California.

88.     Defendant is a manufacturer within the meaning of California Civil Code § 1791(j).

89.     Defendant was responsible for producing the MacBook Pro and directed and was involved in all stages of the production, design, and manufacturing processes.

90.     The MacBook Pro is a "consumer good[ ]" within the meaning of California Civil Code § 1791(a).

91.     Defendant impliedly warranted to Plaintiff that the MacBook Pro was merchantable" under California Civil Code §§ 1791.1(a) and 1792.

92.     Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description;

(2) Are fit for the ordinary purposes for which such goods are used;

(3) Are adequately contained, packaged, and labeled; and

(4) Conform to the promises or affirmations of fact made on the container or label.

93.     Cal. Civ. Code § 1792.1 provides that "[e]very sale of consumer goods that are sold at retail in this state by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such manufacturer's implied warranty of fitness."

94.     Defendant breached the implied warranty of merchantability by producing, manufacturing, and selling products that were not merchantable and/or fit for their particular purpose. The MacBook Pro laptops are defective and have defective flex cables, which connect the laptop's display screen to the base of the laptop. The flex cable is a latent, physical defect. The flexible ribbon cable wraps over the display controller board and deteriorate over time with the ordinary use of opening and closing the laptop display screen. The deterioration of the flex cables results in the display screen exhibiting dark spots and/or in the display screen turning completely black when the laptop screen is open beyond certain angles. Therefore, consumers are prevented from using their laptops for their ordinary and intended purpose: to open the display screen beyond a 45-degree angle when using the laptop.

95.     At the time of purchasing the MacBook Pro, Plaintiff and the Class members intended to use the MacBook Pro as a portable laptop, and to keep the display screen open beyond a 45-degree angle while using their laptops without experiencing any patches of dark spots on the screen.

96.     Because Defendant extensively marketed and advertised the MacBook Pro as a product with the best display screen ever designed by Apple, Defendant knew at the time it sold the MacBook Pro to Plaintiff and the Class members that Plaintiff and the Class members intended to use the MacBook Pro for the particular purpose of a portable laptop that displayed "truer-to-life pictures with realistically vivid details…[34]"

/ / /

---

[34] http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed 8/18/20)

97.     Any attempt by Defendant to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to the failure to adhere to Cal. Civ. Code §§ 1792.3 and 1792.4, which provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Defendant's attempted warranty disclaimer does not conform to Sections 1792.3 and 1792.4. The disclaimer does not state that the buyer assumes the entire cost of all servicing or repair. Further, the disclaimer is not stated in "simple and concise" language.

98.     As a direct and proximate cause of Defendant's breach of the Song-Beverly Consumer Warranty Act, pursuant to Cal. Civ. Code § 1791.1(d) and 1794, Plaintiff and the other Class members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiff and Class members. Plaintiff and Class members were damaged as a result of the defects in the MacBook Pro laptops in an amount to be proven at trial.

99.     Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of the MacBook Pro laptops or the overpayment or diminution in value of their MacBook Pro laptops.

100.    Plaintiff seeks costs and expenses, including reasonable attorneys' fees, under California Civil Code § 1794.

**COUNT IV**
**Violation of the California Unfair Competition Law**
**[Business and Professions Code §§ 17200, *et seq.*]**
**(Asserted on Behalf of Plaintiff and the California Subclass)**

101.    Plaintiff re-alleges and incorporate the foregoing paragraphs as though fully set forth herein.

102.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

1    deceptive, untrue or misleading advertising."

2        103.    Plaintiff and the Class members have standing to pursue a cause of action against

3    Defendant for unfair, unlawful, and fraudulent business acts or practices because they have

4    suffered an injury in fact and lost money as a result of Defendant's actions and/or omissions as

5    set forth herein.

6                                          **Unlawful**

7        104.    Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 because it is in

8    violation of the CLRA, FAL, the Song-Beverly Consumer Warranty Act, the Magnuson-Moss

9    Warranty Act, and constitutes breach of express and implied warranties, and fraudulent

10   concealment.

11                                          **Unfair**

12       105.    Defendant's conduct is unfair under Bus. & Prof. Code § 17200 because it violates

13   California's public policy, legislatively declared in the Song-Beverly Consumer Warranty Act,

14   requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and

15   intended purposes. Defendant's conduct caused substantial consumer injury, is not outweighed

16   by benefits to consumers or competition, and is not one consumers can reasonably avoid.

17       106.    Defendant's conduct described herein is unfair under Bus. & Prof. Code § 17200

18   because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to

19   consumers, and any utility of such practices is outweighed by the harm caused to consumers,

20   including to Plaintiff, the Class, and the public, including as follows:

21            a.  Defendant promoted and sold the MacBook Pro laptops, knowing they were

22                defective and likely to fail prematurely;

23            b.  Defendant failed to disclose that the MacBook Pro laptops are defective, and

24                represented through advertising, product packaging, press releases, on its

25                website, and other sources that the MacBook Pro possessed particular qualities

26                that were inconsistent with their knowledge of the defects;

27            c.  Despite numerous repeated complaints by consumers of the defective

28                MacBook Pro laptops, Defendant failed to provide adequate remedies to

consumers. Although Defendant launched the "Backlight Service Program," the repair program is only limited to 13-inch 2016 MacBook Pro models. Therefore, 15-inch models and models other than for the year 2016 are excluded from the repair program. Further, the program does not purport to reimburse consumers for any out-of-pocket expenses they made to repair their defective MacBook Pro laptops prior to the announcement of the service program, and/or to provide consumers with a loaner laptop while their MacBook Pro laptops are being serviced. The service program is inadequate.

107.    The gravity of harm resulting from Defendant's unfair conduct outweighs any potential utility. The practice of selling defective laptops without providing an adequate remedy to cure the defect – and continuing to sell those laptops without full and fair disclosure of the defect – harms the public at large and is part of a common and uniform course of wrongful conduct.

108.    The harm from Defendant's conduct was not reasonably avoidable by consumers. The MacBook Pro suffers from a latent defect, and even after receiving repeated complaints from consumers, Defendant did not disclose the defect. Plaintiff did not know of, and had no reasonable means of discovering, that the MacBook Pro flex cables are defective.

109.    There were reasonably available alternatives that would have furthered Defendant's business interests, such as: (1) acknowledging the defect and providing a permanent fix for all MacBook Pros affected by the defect; (2) disclosing the defect to consumers; (3) extending the warranty for the MacBook Pro; and (4) offering refunds or suitable non-defective replacement laptops to consumers with failed display screens.

**Fraud by Omission**

110.    Defendant knew or should have known that its advertising campaign was false, deceptive, and misleading. Defendant knowingly and intentionally concealed from Plaintiff and the Class members that the MacBook Pro contains a latent defect that renders the display screen prone to failure. Nevertheless, Defendant advertised that the MacBook Pro laptops were functional, high-quality products, with the best display screen that Apple ever designed, without

disclosing facts about the latent defects of the laptops.

111. Defendant had ample means and opportunities to alert Plaintiff and the Class members of the defective nature of the MacBook Pro, including on Apple's website, in its advertisements, and on the MacBook's external packaging. However, Defendant uniformly failed to disclose that the MacBook Pro is defective.

112. The misrepresentations and omissions by Defendant of the material facts detailed above constitute a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200.

113. Reasonable consumers had no way of knowing that Defendant was engaged in false, deceptive, and misleading advertising, and therefore could not have reasonably avoided the injuries that they suffered. Had Apple disclosed that the MacBook Pro is defective, Plaintiff and the Class members would not have purchased the MacBook Pro, would not have purchased it at the price they did, or would have returned it during their respective buyer's remorse periods.

114. Defendant was under a duty to disclose that the MacBook Pro is defective, given their exclusive knowledge of the defect prior to the sale of the laptop and because they made partial representations about the MacBook Pro without disclosing the latent defect.

115. Defendant's wrongful conduct is ongoing and part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

116. Plaintiff and the Class members suffered injury in fact, including lost money or property, as a result of Defendant's unlawful, unfair, and fraudulent acts and omissions.

117. Pursuant to Business & Professions Code §§ 17203, Plaintiff and the members of the Class seek an order of this Court requiring Defendant to (a) identify all defective MacBook Pro laptops; (b) ensure that all defective MacBook Pro laptops are identified on its website; and (c) ensure that all defective MacBook Pro laptops are removed from the stream of commerce.

118. Plaintiff also seeks an order requiring Defendant to make full restitution of its ill-gotten gains wrongfully obtained from Class members as permitted by Cal. Business & Professions Code § 17203.

119. Plaintiff seeks attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

/ / /

**COUNT V**

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA")**
**(Asserted on Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

120.    Plaintiff re-alleges and incorporate the foregoing paragraphs as though fully set forth herein.

121.    The MacBook Pro is a "consumer product[]" under the MMWA. 15 U.S.C. § 2301(1).

122.    Plaintiff is a "consumer" under the MMWA. 15 U.S.C. § 2301(3).

123.    Apple is a "supplier" and "warrantor" under the MMWA. 15 U.S.C. § 2301(4) and (5).

124.    Through written and implied warranties, Defendant warranted to Plaintiff and the Classes that the MacBook Pro they purchased was free from defects, of merchantable quality, and fit for the ordinary purposes for which laptops are used.

125.    15 U.S.C. § 2310(d)(3)(C) is satisfied because Plaintiff properly invokes jurisdiction under the CAFA.

126.    Defendant breached and refused to honor these written and implied promises. Defendant promised, affirmed, and expressly warranted that "[t]he new display in the MacBook Pro is the best ever in a Mac notebook," and that it "ensures truer-to-life pictures with realistically vivid details…[35]" Apple's "best ever" display screen warranty became part of the basis of the bargain for Plaintiff and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of purportedly high-end laptops.

127.    Apple breached its warranty by advertising and selling defective MacBook Pros, with defective flex cables and defective designs where the thin flex cables are wrapped around the display controller board. As a result of the defects, the display screen of the MacBook Pro experienced backlight issues and/or was inoperable when the screen was opened beyond certain

---

[35] http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed 8/18/20)

angles. The MacBook Pro failed to perform in accordance with its ordinary and intended purpose.

128.    At the time the MacBook Pro laptops were sold, Defendant had knowledge or should have had knowledge of the defective MacBook Pro as a result of the repeated complaints by consumers of the defects, but failed to provide an adequate remedy. Apple's "Backlight Service Program" is inadequate to address the complaints made by consumers. The repair program is only limited to 13-inch 2016 MacBook Pro models. Therefore, 15-inch models and models other than for the year 2016 are excluded from the repair program. Further, the program does not purport to reimburse consumers for any out-of-pocket expenses they made to repair their defective MacBook Pro laptops prior to the announcement of the service program, and/or to provide consumers with a loaner laptop while their MacBook Pro laptops are being serviced. Apple's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

129.    The amount in controversy for purposes of Plaintiff's individual claims exceeds $25. The amount in controversy of this entire action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

130.    As a direct and proximate result of Defendant's breaches of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class members have suffered damages in an amount to be determined at trial.

131.    Plaintiff also seeks costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

132.    Plaintiff and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of their written and/or implied warranties.

### COUNT VI
**Breach of Express Warranty**
**(Asserted on Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

133.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

134.    Defendant marketed and sold its MacBook Pro laptops into the stream of

commerce with the intent that the Products would be purchased by Plaintiff and the Class.

135. Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that:

a.  Phil Schiller, Vice President for Worldwide Marketing, praised the MacBook Pro as "the new gold standard of notebook computers," "impressive," and "the most forward-looking, advanced MacBook line we have ever had[36]."

b.  Jonathan Ive, former Chief Design Officer for Apple, described the MacBook Pro as "an extremely purposeful and powerful creative tool," and "a milestone in the evolution of the Mac[37]."

c.  "It is simply the thinnest and lightest MacBook Pro we have ever made[38]." The 13-inch model is 17% thinner, 23% smaller in volume, and half a pound less than the previous model. The 15-inch model is 14% thinner, 20% smaller in volume, and half a pound less than the previous model.

d.  "The display of the new Apple Pro is simply the best display we've ever made on a Mac." Compared to the previous 15-inch MacBook Pro model, the new model is 67% brighter, has 67% higher contrast ratio, and 25% more colors.

e.  On its website, Apple flaunted this new MacBook Pro as "[a] touch of genius[39]."

f.  Apple's website emphasized that "[t]he new display in the MacBook Pro is the best ever in a Mac notebook," and that it "ensures truer-to-life pictures with realistically vivid details…[40]"

---

[36] https://www.youtube.com/watch?v=19J1oK1981k (last accessed 8/18/20)

[37] *Id.*

[38] *Id.*

[39] http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed 8/18/20)

[40] *Id.*

**Class Action Complaint**

136.    Defendant made these express warranties regarding the MacBook Pro's quality in writing through their website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain Plaintiff and the Class entered into upon purchasing the MacBook Pros.

137.    Defendant made these warranties and representations in connection with the sale of MacBook Pros to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's warranties and representations regarding the MacBook Pros in deciding whether to purchase the MacBook Pros.

138.    The MacBook Pros do not conform to Defendant's advertisements, warranties, and representations in that they exhibited backlight screen display issues when consumers opened their monitors and that they had defective flex cables.

139.    Defendant had actual or constructive notice of this breach, as it was aware that consumers complained on Defendant's website regarding the backlight display screen issues with the MacBook Pro laptops and because Defendant removed such comments from its website. Further, Defendant had actual or constructive notice of this breach, as it redesigned the length of the flex cable in the 2018 MacBook Pro model, such that the flex cable was 2 mm longer than in the 2016 and 2017 MacBook Pro models. Additionally, Defendant implemented a backlight service program on or about May 21, 2019 – albeit, an inadequate remedy, as discussed above – acknowledging that the 2016 13-inch MacBook Pro laptops displayed backlight issues. Thus, Defendant had notice of the defects.

140.    There is privity between Plaintiff and the Class and Defendant because as set forth above, Defendant expressly warranted to Plaintiff and the Class directly that the MacBook Pro laptops were of superior quality and that the display screens were the brightest and most colorful ever.

141.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased MacBook Pros that are worthless and that they would not have purchased the MacBook Pros at all had they known of the presence of defective flex cables and backlight display screen issues.

142.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's breach of its express warranties.

## COUNT VII
### Breach of Implied Warranty of Merchantability
**(Asserted on Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

143.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

144.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class members.

145.    Defendant sold goods to Plaintiff and Class members.

146.    At all times mentioned herein, Defendant manufactured and supplied the MacBook Pros.

147.    At all relevant times, Defendant impliedly warranted to Plaintiff and Class members that the MacBook Pros were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on Defendant's website.

148.    Plaintiff and the Class members relied on Defendant's promises and affirmations of fact when they purchased the MacBook Pros.

149.    Defendant breached its implied warranties, as the MacBook Pros were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises as they contained defective flex cables that resulted in backlight display screen issues.

150.    Defendant had actual or constructive notice of this breach, as it was aware that consumers complained on Defendant's website regarding the backlight display screen issues with the MacBook Pro laptops and because Defendant removed such comments from its website. Further, Defendant had actual or constructive notice of this breach, as it redesigned the length of the flex cable in the 2018 MacBook Pro model. Additionally, Defendant implemented a backlight service program on or about May 21, 2019, acknowledging that at least the 2016 13-inch MacBook Pro laptops displayed backlight issues.

151.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class

members have suffered actual damages in that they have purchased MacBook Pros that they would not have purchased at all had they known of the presence of defective flex cables and backlight display screen issues or otherwise not warranted as represented.

152.    Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's breach of its implied warranties, as set forth above.

## COUNT VIII
**Violation of the Consumer Fraud Statutes of All 50 States and the District of Columbia
(Asserted on Behalf of Plaintiff and the Nationwide Class)**

153.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

154.    Through its deceptive acts and practices (including omissions), Defendant has harmed the public at large, including Plaintiff and the Class, and such deceptive acts and practices were conducted through trade or commerce, and are still ongoing.

155.    Defendant's deceptive acts, practices, and omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of reasonable consumers, including Plaintiff and the Class, regarding the Products.

156.    As set forth herein, Defendant engaged in deceptive or materially misleading acts or practices by, *inter alia*: (1) advertising their MacBook Pros in a way to mislead consumers to choose their products, or (2) choose these MacBook Pros over the products of their competitors.

157.    Plaintiff has standing to pursue these claims because he has suffered injury in fact and a loss of money and/or property as a result of the deceptive conduct alleged herein.

158.    Defendant's acts, representations, and omissions violate the consumer protection laws of the following jurisdictions:

a.   Alabama Deceptive Trade Practices Act, Ala. Statutes Ann. §§ 8-19-1, *et seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 5.50.471, *et seq.*;

c.   Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.*;

d.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

e.   California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, and Unfair Competition Law, Bus. & Prof Code § 17200, *et seq.*;

f.   Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;

g.   Connecticut Unfair Trade Practices Act, Conn. Stat § 42-110a, *et seq.*;

h.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

i.   District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

j.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

k.   Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

l.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

m.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

n.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

o.   Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.*;

p.   Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.*;

q.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.*;

r.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.*;

s.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.*;

**Class Action Complaint**

1      t.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine

2           Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et*

3           *seq.*;

4      u.   Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

5      v.   Massachusetts Unfair and Deceptive Practices Act, Mass. Laws ch. 93A;

6      w.   Michigan Consumer Protection Act, § § 445.901, *et seq.*;

7      x.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.*;

8           and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43,

9           *et seq.*;

10      y.   Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;

11      z.   Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

12      aa.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code

13           § 30-14-101, *et seq.*;

14      bb.  Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the

15           Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et*

16           *seq.*;

17      cc.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et*

18           *seq.*;

19      dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

20      ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.*;

21      ff.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.*;

22      gg.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law ("GBL"),

23           §§ 349 and 350;

24      hh. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.*;

25      ii.  North Carolina Unfair and Deceptive Trade Practices Act, North Carolina

26           General Statutes §§ 75-1, *et seq.*;

27      jj.  Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.*;

28      kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 §§ 751, *et seq.*;

**Class Action Complaint**

ll.  Oregon Unfair Trade Practices Act, Rev. Stat §§ 646.605, *et seq.*;

mm.   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1, *et seq.*;

nn. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Laws § 6-13.1-1, *et seq.*;

oo. South Carolina Unfair Trade Practices Act, S.C. Code Laws §§ 39-5-10, *et seq.*;

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

qq. Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.*;

rr.  Texas Stat. Ann. §§ 17.41, *et seq.*, Texas Deceptive Trade Practices Act, *et seq.*;

ss.  Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.*;

tt.   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

uu. Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.*;

vv. Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

ww.   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.*; and

yy. Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

159.   Defendant's false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiff and the Class and the public, acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

160.   Plaintiff and Class members have suffered actual damages as a result of Defendant's violations of the consumer protection laws set forth herein, and are entitled to relief including, but not limited to, statutory damages, actual damages, costs, attorneys' fees, and injunctive relief; in addition to all other relief as the Court may deem necessary and proper.

/ / /

1

2

3

**COUNT IX**
**Fraudulent Concealment**
**(Asserted on Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

4    161.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

5    forth herein.

6    162.    Plaintiff brings this claim on behalf of the Class under California law.

7    163.    Defendant intentionally suppressed and concealed material facts concerning the

8    quality of the MacBook Pro laptops. Through numerous consumer complaints concerning the

9    defective flex cables and backlight issues, Defendant knew or reasonably should have know of

10   the defects but failed to disclose such defects to Plaintiff and the Class members.

11   164.    Because the defective nature of the MacBook Pro laptops is latent, Plaintiff and

12   the Class members had no reasonable means of knowing that Defendant's representations about

13   the superior quality of the laptop and the display screen were incomplete, false, or misleading, or

14   that they had failed to disclose that the MacBook Pro is defective. Plaintiff and the Class members

15   did not and reasonably could not have discovered Defendant's deception prior to the purchase or

16   expiration of their respective buyer's remorse periods.

17   165.    The existence of the defect is material. Had Plaintiff and the Class members known

18   that the MacBook Pro is defective, they would not have purchased their MacBook Pro laptops,

19   would not have purchased them at the price they did, or would have returned the MacBook Pro

20   during their respective buyer's remorse periods.

21   166.    Defendant had a duty to disclose the defect because they possessed exclusive

22   knowledge of it. Further, through advertising, press releases, launch events, their website, and

23   other sources, Plaintiff and other Class members were exposed to Defendant's general, partial

24   representations regarding the high quality of the MacBook Pro, including the best display screen

25   that Defendant ever designed, but failed to disclose facts that would have materially qualified

26   these partial representations.

27   167.    Plaintiff was exposed to Defendant's specific representations about the MacBook

28   Pro before purchase and within the time period in which he could have returned the MacBook

Pro without penalty. Plaintiff saw Apple's representations about the MacBook Pro online or in product advertisements. None of the informational sources Plaintiff encountered indicated that the MacBook Pro is defective.

168.    Plaintiff and the Class members reasonably relied to their detriment upon Defendant's material omissions regarding the quality of the MacBook Pro and the existence of the defect in deciding to purchase their laptops.

169.    Plaintiff and the Class members sustained damage as a direct and proximate result of Defendant's deceit and fraudulent concealment. Among other damages, Plaintiff and the Class members did not receive the value of the premium price they paid for their MacBook Pro laptops.

170.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class Members' rights, interests, and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined at trial.

### <u>COUNT X</u>
**Unjust Enrichment**
**(Asserted on Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

171.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

172.    Plaintiff and the Class members conferred an economic benefit upon Defendant by purchasing the MacBook Pros.

173.    Defendant had an appreciation or knowledge of the benefit conferred by Plaintiff and the Class members.

174.    Plaintiff and Class members would not have purchased the MacBook Pros had they known that the MacBook Pros contained defective flex cables, defective designs with the flex cables wrapped around the display controller board, and backlight display screen issues.

175.    Defendant accepted and retained the economic benefit conferred by Plaintiff and Class members under circumstances as to make it inequitable for Defendant to retain the benefit without payment of its value.

176.    Plaintiff and the Class members request restitution for their purchases.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.    For and order certifying the Class defined herein under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff as Class Representative and her attorneys as Class Counsel;

B.    For a declaration that Defendant's conduct violates the statutes referenced herein;

C.    For an order requiring Defendant:

1.  To identify all defective MacBook Pro laptops;

2.  To ensure that all defective MacBook Pro laptops are identified on its website; and

3.  To ensure that all defective MacBook Pro laptops are removed from the stream of commerce;

D.    For an order an order awarding Plaintiff and Class members their actual damages, treble damages, punitive damages, and statutory damages as provided by law;

E.    For an order an order awarding Plaintiff and the Class members restitution, disgorgement, and/or any other equitable relief;

F.    For an order an order awarding Plaintiff and the Class members pre- and post-judgement interest allowed under the law;

G.    For an order an order awarding Plaintiff and the Class members reasonable attorneys' fees and costs allowed under the law; and

H.    For such other and further relief as may be just and proper.

DATED:  August 19, 2020                         **MARLIN & SALTZMAN, LLP**


By:  ___/s/ Tatiana G. Avakian_____
        Stanley D. Saltzman, Esq.
        Tatiana G. Avakian, Esq.
        *Attorneys for Plaintiff and putative Class*

1

## **JURY DEMAND**

2      Plaintiff demands a trial by jury on all causes of action so triable.

3   DATED:   August 19, 2020          **MARLIN & SALTZMAN, LLP**

4

5                                By:   ⁄s⁄ Tatiana G. Avakian

6                                      Stanley D. Saltzman, Esq.
                                       Tatiana G. Avakian, Esq.
7                                      *Attorneys for Plaintiff and putative Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Class Action Complaint**